IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Kelvin Jerod Holman, ) | |
| ) | Cr. No. 5:04-964 |
| Movant, ) | |
| ) | |
| vs. ) | |
| ) | **OPINION AND ORDER** |
| United States of America, ) | |
| ) | |
| Respondent. ) | |
| _____) | |

    Movant Kelvin Jerod Holman is a federal inmate who currently is incarcerated at FCI-Bennettsville in Bennettsville, South Carolina. This matter is before the court on Movant's pro se motion pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct sentence, which motion was filed on September 21, 2012. The government filed a motion for summary judgment on December 14, 2012. By order filed December 17, 2012, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), Movant was advised of the summary judgment procedures and the possible consequences if he failed to respond adequately. Movant filed a response in opposition to Respondent's motion on January 16, 2013. Movant also filed a pro se motion to supplement on June 26, 2013. The government filed a response in opposition to Movant's motion to supplement on July 30, 2013, to which Movant filed a reply on August 9, 2014. The court hereby **grants** Movant's motion to supplement (ECF No. 356) and will address the ground for relief raised therein.

I. FACTS AND PROCEDURAL BACKGROUND

    Movant was indicted on October 19, 2004, and charged with conspiracy to possess with intent to distribute and to distribute five kilograms or more of cocaine and fifty grams or more of cocaine base, in violation of 21 U.S.C. § 846 (Count 1); and possession with intent to distribute and distribution of fifty grams or more of cocaine base, in violation of 21 U.S.C. § 841(a)(1) and

841(b)(1)(A) (Count 2). Movant initially elected to go to trial. However, prior to a jury being sworn, Movant entered into a plea agreement as to Count 1. The court held a change of plea hearing on May 30, 2006. At the change of plea hearing, Movant was placed under oath. He informed the court that he was satisfied with his lawyer. Change of Plea Transcript, ECF No. 246, 31. Movant stated that he understood that the court could not determine a sentence under the United States Sentencing Guidelines until after the presentence investigation report (PSR) was prepared. Id. at 32. Movant stated that he had spoken to his lawyer about relevant conduct and how it might apply to his case. Id. The court reviewed Count 1 of the indictment with Movant, including the elements of the offense of conspiracy and the possible penalty that he could face, i.e., a minimum term of imprisonment of ten years and a maximum term of life imprisonment. Id. at 35-37.

Respondent United States of America (the "government") next recited the terms of the plea agreement. Among other things, the government noted that the government agreed to dismiss Count 2 of the indictment. The government further noted that Movant understood the dismissal of Count 2 placed no limitation upon the court's consideration of the information relating to Count 2 for purposes of relevant conduct. The government noted that Movant understood sentencing is within the sole discretion of the court. Id. at 40-41. Upon query by the court, Movant indicated to the court that no one had promised him what sentence he would receive. Id. at 44. Movant stated that, other than the plea agreement, no one had promised him anything or held out any hope of reward to get him to plead guilty. Id. at 45.

A PSR was prepared by the United States Probation Office. Movant was held accountable for 35,270 grams of cocaine base and 30,067 grams of cocaine powder, for a total marijuana equivalent of 711,411.2 kilograms. Movant's base offense level under the sentencing guidelines was

38. Movant received a two-level enhancement for possessing a dangerous weapon. Movant also received a two-level enhancement for his role as an organizer, leader, manager, or supervisor in a criminal activity. Movant's total offense level was 42. Movant's criminal history category was I. The resulting guideline range was 360 months to life imprisonment.[1]

A sentencing hearing was set for December 19, 2006. Defendant failed to appear. He subsequently was arrested on June 1, 2007. A revised PSR was prepared. Movant again was held accountable for 711,411.2 kilograms of marijuana equivalent. He received a two-level enhancement for being an organizer, leader, manager, or supervisory in a criminal activity. Movant also received a two-level enhancement for obstruction of justice because he had failed to appear for sentencing on December 19, 2006. Movant's total offense level was 42.[2] With a criminal history category of I, Movant's guidelines range was 360 months to life imprisonment. Movant objected to information in the PSR provided by his co-defendant, Kelvin Bernard Tyler, as well as other information provided by government witnesses.

On December 10, 2007, Movant filed a motion to withdraw his guilty plea. The court held a sentencing hearing on August 6, 2008, at which time it heard Movant's motion. Movant was placed under oath. Sentencing Hearing Transcript, ECF No. 247, 10. Movant stated that the government had promised him a sentence of four and a half to five years to induce him to enter into the plea agreement. Id. at 11. The court pointed out Movant had informed the court at the change of plea hearing that he had not been promised anything. Id. at 14. The court further noted that

---

[1] Movant received no points for acceptance of responsibility because he was arrested on December 3, 2006, for driving under the influence, first offense.

[2] No party objected to the elimination of the dangerous weapon enhancement that had been contained in the initial PSR.

3

Movant had been informed at the change of plea hearing that his sentence could not be determined until after a PSR had been prepared. Id. at 16. The court further advised Movant that his plea agreement reflected the statutory sentence he faced, i.e., ten years to life imprisonment. Id. at 17. The court considered the factors set forth in United States v. Moore, 931 F.2d 245, 248 (4th Cir. 1991), and denied Movant's motion to withdraw his guilty plea. Id. at 17.

The court turned to the matter of sentencing and asked if Movant had reviewed the revised PSR dated June 3, 2008. Id. at 25. The United States Probation Officer stated that the most recent PSR had been revised to correct a typographical error, and that the change did not change Movant's guidelines range or drug amounts. Id. at 26. Movant's trial counsel advised the court that Movant had been shown the last revised PSR. Id. at 27. Movant denied seeing it. Id. Trial counsel affirmed that the PSR had not changed in a substantial way. Id. The court thereupon heard from counsel on the objections to the PSR. Counsel argued that the drug amounts attributed to Movant had been inflated by the government's witnesses. Id. at 27-28.

The government called Curtis Moody to the stand. Id. at 29. Moody had pleaded guilty to conspiracy in a different case to distribute fifty grams or more of cocaine base. Id. at 32; see United States v. Gadson, 5:01-cr-084-CMC. Moody testified pursuant to a plea agreement. ECF No. 247 at 32. Moody testified that he purchased cocaine base from Movant approximately every weekend for two to three years. Id. at 37. Moody testified that in 1997 or 1998 he commenced purchasing cocaine powder and cocaine base from Movant every other week. Id. at 38-40. Moody would break down his purchases into smaller quantities for resale. Id. at 40-41. Moody testified that Movant taught him how to manufacture cocaine base. Id. at 41. Moody purchased cocaine powder and cocaine base from Movant until early 2000. Id. at 45. Moody testified that he purchased four-and-a-

half ounces of cocaine powder or cocaine base from Movant approximately twenty weeks a year from 1998 to 2000. Id. at 57-61.

The government next called Christopher Michael Corbitt to the stand. Corbitt had pleaded guilty in a different case to conspiracy to sell cocaine base. Id. at 64; see United States v. Walker, 1:98-cr-658-JFA. Corbitt testified pursuant to a plea agreement. Id. at 65. Corbitt testified that Movant purchased at least half an ounce of cocaine base from him twice a week from 1997 until 1998. Id. at 69. Corbitt testified he sold approximately three kilograms of cocaine base to Movant during this period. Id. at 72.

The government next called Antonio James. James had pleaded guilty in a different case to a conspiracy involving cocaine and cocaine base. Id. at 82; see United States v. James, 5:00-cr-1036-CMC. James testified pursuant to a plea agreement. James testified that he purchased half an ounce of cocaine base from Movant on one occasion in approximately 1996. Id. at 88.

The government next called Ed Govan. Govan also had pleaded guilty in a different case to conspiracy to possess five kilograms or more of cocaine and fifty grams or more of cocaine base. Id. at 98; see United States v. Gadson, 5:01-cr-084-CMC. Govan testified pursuant to a plea agreement. Govan testified that he met Movant in approximately 1997. Id. at 99. Govan testified that he purchased two ounces of cocaine base from Movant and two ounces of cocaine on separate occasions. Id. at 100-02, 109. Govan also testified that he occasionally dealt with Movant through Chantley Perry. Id. at 101.

The government called Movant's co-defendant, Kelvin Tyler, to the stand. Id. at 111. Tyler had pleaded guilty in the within action to conspiracy to possess five kilograms of cocaine and fifty grams or more of cocaine base. Id. at 125. Tyler also testified pursuant to a plea agreement. Id.

Tyler testified that in 1995 he would provide Movant with two to three ounces of cocaine base once a week for two months. Id. at 113-14. Tyler testified that he progressed to providing Movant with half kilograms of cocaine powder weekly, after which he taught Movant how to manufacture cocaine base. Id. at 114. Tyler testified that after two or three more months, he began supplying Movant with a kilograms of cocaine or cocaine base every week until the fall of 1997. Tyler testified that he and Movant parted ways, but that from time to time he would borrow money from Movant and pay him back in cocaine powder. Id. at 114. Tyler and Movant had a few other drug transactions around 2003. Id. at 120-24. Tyler estimated that he supplied Movant with seventy to seventy-five kilograms between 1995 and 1997. Id. at 126. Of that, approximately half consisted of cocaine powder, and the remaining consisted of cocaine base. Id. at 133-34. Tyler testified that Moody, "a guy named TC . . . [and] another young guy in Denmark[, South Carolina] named Mario" worked for Movant. Id. at 117.

The court found that the amount of drugs attributable to Movant from Tyler was thirty kilograms of cocaine and thirty kilograms of cocaine base. Id. at 139. The court further found that three kilograms of cocaine base should be attributed to Movant based on Corbitt's testimony. The court found that 2.2 kilograms of cocaine base should be attributed to Movant based on Moody's testimony. Id. at 140. The court further found that fifty-six grams of cocaine powder and fifty-six grams of cocaine base should be attributed to Movant based on Govan's testimony. Finally, the court found that fourteen grams of cocaine base should be attributed to Movant based on James's testimony, for a total of 35.27 kilograms of cocaine base and 30.056 kilograms of cocaine powder. Id. at 140-41. The marijuana equivalent for the two amounts equaled 711,411.2 kilograms. Id. at 143.

The court thereupon determined that Movant's base offense level was 38. Movant received a two-level increase for his role in the offense, plus an additional two-level increase for obstruction of justice, for a total offense level of 42. Id. at 142. With a criminal history category of I, Movant's guidelines range was 360 months to life imprisonment. The court sentenced Movant to 360 months incarceration. Id. at 151. Judgment was entered on August 12, 2008.

Movant filed a notice of appeal on August 14, 2008. Movant asserted (1) the court erred in applying the two-level enhancement for his role in the conspiracy, and (2) his sentence was unreasonable. The Court of Appeals for the Fourth Circuit affirmed Movant's conviction. However, upon plain error review, the Fourth Circuit remanded the case for resentencing to allow the court to make specific findings with respect to Movant's role in the offense in light of the factors set forth in U.S.S.G. § 3B1.1, application note 4. The Fourth Circuit found it unnecessary to consider Movant's challenge to the procedural and substantive unreasonableness of his sentence. United States v. Holman, 354 F. App'x 791 (4th Cir. 2009).

The court held a resentencing hearing on May 10, 2010. The government called Special Agent Michael E. Stansbury to the stand. Transcript of Resentencing Hearing, ECF No. 284, 8. Stansbury testified that he participated in the investigation of Movant and other individuals selling cocaine powder and cocaine base in the Orangeburg-Denmark area of South Carolina. Id. Stansbury testified he set up a controlled purchase of three ounces of cocaine base from Movant. Stansbury testified that a confidential source was outfitted with audio recording equipment. Id. at 9. According to Stansbury, Movant introduced Tarance Chatman ("T.C.") to the confidential source as "my man, this is who be handling all my shit for me, right?" Id. at 16. Stansbury testified that Movant told the confidential source to contact T.C. in order to reach Movant about future drug deals. Id. at 17.

7

Stansbury also testified that Moody provided information that he had been selling cocaine powder and cocaine base for Movant in Denmark, South Carolina. Id. at 20. The government also recounted the testimony provided by its cooperating witnesses at the sentencing hearing. Id. at 24-30.

The court observed that information contained in the PSR had been corroborated at the sentencing hearing by Tyler, Moody, and Govan. Id. at 38-39. Relying on United States v. Campbell, 354 F. App'x 786 (4th Cir. 2009), and United States v. Marker, 70 F. App'x 139 (4th Cir. 2003), the court determined that Movant used others to further his drug transactions, directed other participants, and exercised decision-making authority. Accordingly, the court concluded that the two-level enhancement for a leadership role in the offense was proper. The court again sentenced Movant to incarceration for a period of 360 months. An amended judgment was entered on May 13, 2010.

Movant again appealed, asserting that the court erred by denying him the opportunity for allocution at the sentencing hearing. The Fourth Circuit found plain error, but further determined that the error did not affect Movant's substantial rights. The Fourth Circuit affirmed Movant's judgment on January 12, 2011. United States v. Holman, 407 F. App'x 755 (4th Cir. 2011). The mandate was issued on February 3, 2011. Movant petitioned the United States Supreme Court for a writ of certiorari. The petition was denied on October 11, 2011. See Holman v. United States, 132 S. Ct. 398 (2011). Movant's timely § 2255 motion is properly before the court.

## II. DISCUSSION

Movant raises the following grounds for relief in his § 2255 motion:

GROUND ONE: Prosecutor and plaintiff's trial counsel collaborated together to induce a plea of guilty from the plaintiff. The prosecuting attorney and plaintiff's counsel of record visited plaintiff along with a federal agent while plaintiff was being

detained on an unrelated offense in Bamberg County, South Carolina. At this meeting, Holman was promised by the prosecutor, with his counsel present, that if he plead guilty, he would only be held accountable for 69.9 grams of crack, of which upon the stipulation of this verbal agreement, Holman plead guilty and at sentencing, Holman filed a motion to withdraw his guilty plea because of the drug amount of kilograms and crack and kilograms of cocaine being assessed against him.

GROUND TWO: District court committed procedural error in not recessing after plaintiff acknowledged not seeing third revised PSR. During Holman's sentencing hearing before the district court concerning the review of the third revised PSR, Holman does acknowledge this on record during this hearing, that he had not in fact reviewed the contents of the information of the latest revised presentence report, before the imposition of his 360 month federal sentence.

GROUND THREE: District court erred at sentencing in determining applicable base offense level based on drug amount. Holman was indicted and convicted, by entry of a guilty plea of participating in a drug trafficking conspiracy involving fifty grams of crack and five kilograms of cocaine. Yet the district court in imposing this sentence, did so, in a mandatory sentencing scheme instead of as in an advisory one. Using evidence not supported by the credible evidence of indictment, plea agreement, or admitted by the plaintiff, in determining drug amount, in determination of Holman's sentence. Clearly a Booker,[3] Apprendi,[4] and Sixth Amendment violation.

See generally ECF No. 338, 5-7.

In his motion to supplement, Holman asserts that his sentencing was contrary to the Supreme Court's ruling in Alleyne v. United States, 133 S. Ct. 2151 (2013).

Law/Analysis

A.   Procedural Bar

The government first contends that Movant's claims are procedurally barred because they could have been raised on direct appeal. The court agrees.

Claims not raised on direct appeal may not be raised on collateral review unless the movant

---

[3] United States v. Booker, 543 U.S. 220 (2005).

[4] Apprendi v. New Jersey, 530 U.S. 466 (2000).

9

shows cause for the default and resulting prejudice or a miscarriage of justice. United States v. Williams, 396 F. App'x 951, 953 (4th Cir. 2010) (citing cases). The existence of cause for a procedural default must turn on something external to the defense, such as the novelty of the claim or a denial of effective assistance of counsel. United States v. Mikalajunas, 186 F.3d 490, 493 (4th Cir. 1999)(citing Murray v. Carrier, 477 U.S. 478, 488 (1986)). In order to demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack, Movant must show actual innocence by clear and convincing evidence. Id. (citing Murray, 477 U.S. at 496).

In this case, Movant contends that he did not raise Ground One on direct appeal "due to the off record discussion concerning this with prosecutor during plea phase and a conflict with attorney concerning this." ECF No. 338, 4. Movant asserts he did not raise Ground Two on direct appeal because "trial counsel was against plaintiff's desire to do so and raised other claims instead, allegedly in best interest of plaintiff." Id. at 6. As to Ground Three, Movant states, "even though the drug amount was objected to at sentencing, attorney did not raise this issue on appeal." Id. at 7.

The court concludes that Movant has failed to show cause for the procedural default. Accordingly, Movant's grounds for relief are barred from federal habeas review.

Movant contends that his claims should be construed as asserting ineffective assistance of trial and/or appellate counsel, such that the claims are not procedurally defaulted. See United States v. Gray, 393 F. App'x 971, 972 (4th Cir. 2010) (citing United States v. King, 119 F.3d 290, 295 (4th Cir. 1997)) (noting that claims of ineffective assistance of counsel generally are not cognizable on direct appeal). Movant's grounds for relief are nevertheless without merit.

B.     Ineffective Assistance of Counsel

To prove ineffective assistance of counsel, Movant must show that trial counsel's performance was deficient. See Strickland v. Washington, 466 U.S. 668, 687 (1984). An attorney's performance is deficient when it is not reasonable under prevailing professional norms. Id. at 688. Movant also must demonstrate that he was prejudiced by trial counsel's alleged deficient performance, in that because of trial counsel's unprofessional errors, the result of the proceeding would have been different. See id. at 694. Strickland requires Movant to "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." Id. at 690. The court then must "determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Id. Even if counsel's performance is outside the wide range of professional assistance, an error by counsel will not warrant setting aside the conviction if the error had no effect on the judgment. Id. at 694.

In Hill v. Lockhart, 474 U.S. 52, 58-59 (1985), the Supreme Court held that, in order to prove ineffective assistance of counsel subsequent to a guilty plea, a movant must show that (1) counsel's errors were below a standard of reasonable competence, and (2) but for those errors, the movant would not have pleaded guilty but would have proceeded to trial. "A guilty plea is constitutionally valid if it represents a voluntary and intelligent choice among the alternative choices of action open to the defendant." United States v. Roberts, 426 F. App'x 195, 196 (4th Cir. 2011) (quoting United States v. Moussaoui, 491 F.3d 263, 278 (4th Cir. 2010)) (internal quotation marks omitted).

1.     Stipulation regarding sentence (Ground One). Movant contends that his change of plea should be set aside because he was promised he would be held accountable for only 69.9 grams

of cocaine base. As an initial matter, the court notes that the plea agreement signed by Movant contained no stipulation as to the amount of drugs attributable to Movant or an agreement as to an appropriate sentence. Further, assuming for purposes of discussion that Movant was told he would be held accountable for 69.9 grams of cocaine base, any deficient performance or misconduct was cured during the guilty plea colloquy. As set forth in detail hereinabove, the court informed Movant of the statutory penalties and that his sentence could be affected by relevant conduct. Further, Movant told the court that he had not been promised anything in order to induce him to plead guilty. "'A defendant's solemn declarations in open court affirming a plea agreement carry a strong presumption of verity because courts must be able to rely on the defendant's statements made under oath during a properly conducted Rule 11 plea colloquy.'" United States v. Morgan, 284 F. App'x 79, 87 (4th Cir. 2008)(quoting United States v. Lemaster, 403 F.3d 216, 221 (4th Cir. 2005)). According to the Fourth Circuit, "'in the absence of extraordinary circumstances, allegations in a § 2255 motion that directly contradict the [movant's] sworn statements made during a properly conducted Rule 11 colloquy are always palpably incredible, and patently frivolous or false.'" Id. (quoting Lemaster, 403 F.3d at 221) (internal quotations omitted). Movant's Ground One, whether framed as a direct appeal issue or ineffective assistance of counsel, is without merit.

    2.    Failure to recess (Ground Two). Movant contends that he should have been allowed to review the revised PSR used during his sentencing proceeding. Pursuant to Fed. R. Crim. P. 32(e)(2), a defendant and his attorney must be provided with a copy of the PSR at least thirty-five days before sentencing. The court must verify at sentencing that the defendant and the defendant's attorney have read and discussed the PSR and any addendum to the report. Fed. R. Crim. P. 32(i)(1)(A).

As described hereinabove, the June 3, 2008 PSR had been revised to correct a typographical error. Assuming for purposes of discussion that, contrary to trial counsel's statements, he did not review the revised PSR with Movant, Movant fails to explain how he was prejudiced by the correction of a scrivener's error. Movant's Ground Two, whether framed as a direct appeal issue or ineffective assistance of counsel, is without merit.

3.      <u>Failure to treat Guidelines as advisory</u> (Ground Three). Movant contends that the court failed to consider the advisory nature of the United States Sentencing Guidelines in determining his sentence, in violation of his rights under <u>Apprendi</u>, <u>Booker</u>, and the Sixth Amendment. The Sixth Amendment protects the right of an accused to a "speedy and public trial, by an impartial jury[.]" <u>Apprendi</u> holds that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. In <u>Booker</u>, the Court struck down the mandatory provisions of the Sentencing Reform Act of 1984 that were incompatible with the Sixth Amendment requirement that the jury find certain sentencing facts. 543 U.S. at 245.

According to Movant, the court-imposed sentence of 360 months imprisonment was greater than the guidelines range applicable to 69.9 grams of cocaine base, that being 121 to 151 months incarceration.[5] Movant contends that the drug weights attributed to him were never admitted by him nor found by a jury. The Fourth Circuit has explained that the constitutional rule set out in <u>Apprendi</u> does not prohibit a sentencing court from finding, by a preponderance of the evidence, facts relating to the application of the guidelines, as long as the sentence imposed is less than the statutory

---

[5] Under U.S.S.G. § 2D1.1 at the time Movant was sentenced, 69.9 grams of cocaine base would comprise a Level 32. With a criminal history category of I and no other enhancements, Movant's guideline range would have been 121-151 months.

13

maximum for the offense of conviction. See, e.g., United States v. Dickens, 19 F. App'x 82, 84 (4th Cir. 2001) (citing cases). If a defendant expressly waives his Sixth Amendment rights, consents to factfinding by the court, or admits the fact otherwise committed to the jury, Sixth Amendment protections are avoided. United States v. Milam, 443 F.3d 382, 387 (4th Cir. 2006).

Here, the plea agreement executed by Movant provides that he understood no limitation would be placed upon the court's consideration of any information concerning the background, character, and conduct of Movant for the purpose of imposing an appropriate sentence, and that any dismissed counts could be considered as relevant conduct. Id. ¶ 10. Further, Movant acknowledged that the Guidelines are advisory and would be reviewed by the court in determining a reasonable sentence. ECF No. 119, ¶ 14. The plea agreement also indicates that Movant understood the matter of sentencing is within the sole discretion of the court. In addition, the court conducted a through Rule 11 colloquy at which time Movant affirmed his waiver of his Sixth Amendment rights. ECF No. 246, 34-35. Movant's Ground Three, whether framed as a direct appeal issue or ineffective assistance of counsel, is without merit.

C.     Application of Alleyne (Supplemental Motion)

In Alleyne, the Supreme Court determined that, consistent with Apprendi v. New Jersey, 530 U.S. 466 (2000), any fact that, by law, increases a mandatory minimum sentence is an "element" that must be submitted to the jury.[6] In Alleyne, the penalty for the crime of using or carrying a firearm in relation to a crime of violence increased from five years to seven years incarceration if the firearm was brandished, and to ten years imprisonment if the firearm was discharged. See 18 U.S.C. §

---

[6] As discussed above, the Court held in Apprendi that any fact that increases the statutory maximum sentence must be found by a jury.

14

924(c)(1)(A). According to the Court, "[t]he essential point is that the aggravating fact produce[s] a higher range, which, in turn, conclusively indicates that the fact is an element of a distinct and aggravated crime. It must, therefore, be submitted to the jury and found beyond a reasonable doubt." Alleyne, 133 S. Ct. at 2162-63.

Contrary to Movant's contention, Alleyne has no application to Movant's sentence. The court's determinations regarding the drug weights to be attributed to Movant did not increase Movant's mandatory minimum sentence of ten years incarceration, but, rather, were used to establish Movant's advisory guidelines sentence. Accord United States v. Benn, 572 F. App'x 167 (4th Cir. 2014) (citing United States v. Ramirez-Negron, 751 F.3d 42 (1st Cir. 2014); United States v. Smith, 751 F.3d 107 (3d Cir. 2014); United States v. Claybrooks, 729 F.3d 699 (7th Cir. 2013)). Movant's claim is without merit.

### III.  CONCLUSION

For the reasons stated, the government's motion for summary judgment (ECF No. 347) is **granted**. Movant's § 2255 motion is **denied and dismissed, with prejudice**.

### IV.  CERTIFICATE OF APPEALABILITY

A certificate of appealability will not issue absent "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A prisoner satisfies this standard by demonstrating that reasonable jurists would find that any assessment of the constitutional claims by the district court is debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable. Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003); Rose v. Lee, 252 F.3d 676, 683-84 (4th Cir.2001). The court concludes that Movant has not made the requisite showing. Accordingly,

the court **denies** a certificate of appealability.

       **IT IS SO ORDERED**.

                                        /s/ Margaret B. Seymour  
                                        Senior United States District Judge

Columbia, South Carolina

January 29, 2015

**NOTICE OF RIGHT TO APPEAL**

**Movant is hereby notified that she has the right to appeal this order pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure.**